UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **EDWARD COLLIER** | **CASE NO.  2:19-CV-00848** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **BERNHARD MCC LLC** | **MAGISTRATE JUDGE KAY** |

MEMORANDUM RULING

Before the Court is Defendant, Bernhard MCC LLC's ("BMCC"), Motion for Summary Judgment.  Rec. Doc. 24.  This Motion is opposed by Plaintiff, Edward Collier.  Rec. Doc. 35. For the following reasons, the Motion for Summary Judgment is **GRANTED.**

I.    Factual and Procedural Background

This lawsuit stems from alleged discrimination, harassment, and retaliation against Mr. Collier by his former employer BMCC based on Mr. Collier's disability.  When hired, it is undisputed that Mr. Collier suffered from several mental health conditions, including ADHD, bipolar disorder, narcolepsy, and schizoaffective disorder.  Rec. Doc. 35-22, p. 10.  Mr. Collier applied to work for BMCC in October of 2017 after hearing about the job through his brother. *Id.*, p. 5.  BMCC argues that they were never informed of these conditions.  Rec. Doc. 24-8, ¶¶28-33.  Mr. Collier, however, claims that he informed the company in both conversations with several different individuals and in his initial hiring paperwork which he maintains must have been altered by BMCC sometime after he had been hired.  Rec. Doc. 35-22, p. 11-14.

During his time with BMCC, Mr. Collier had several absences from work due to various medical conditions.  *Id.*, p. 18-19.  BMCC claims that there was a company policy requiring a doctor's note for any work absences to be excused.  Rec. Doc. 24-8, ¶51.  While Mr. Collier does

not dispute that such a policy existed in theory, he does claim that the policy was never enforced except against himself. Rec. Doc. 35-22, p. 18-20. After several absences in November of 2017, Mr. Collier was confronted by his supervisor, Brian Anderson, who asked for a doctor's note which led to a heated conversation following which Mr. Collier left work to get the doctor's note. Rec. Doc. 24-2, p. 165-66. On December 5, 2017, Mr. Collier returned to work with a doctor's note, at which time Mr. Anderson and another supervisor, Larry Jones, asked Mr. Collier to sign a write-up reprimanding him for leaving work without notifying his supervisor. *Id.*, p. 179-80; Rec. Doc. 35-2, p. 59-67. Mr. Collier refused to sign the write-up in this case and instead left the premises after which his employment was terminated by BMCC. Notably, in these exchanges there are disputed facts as to who caused any escalation, with Mr. Collier primarily blaming Mr. Anderson and BMCC claiming that it was primarily Mr. Collier who was hostile.

     Two additional sets of facts are also critical to this matter. First, Collier alleges in the time that Mr. Collier worked with Mr. Anderson, Mr. Anderson allegedly harassed Mr. Collier several times. Rec. Doc. 24-8, ¶¶66-71. While BMCC does not dispute the actual underlying events, there is no evidence to prove Mr. Anderson's behavior was tied to Mr. Collier's disability. Secondly, it is undisputed that Mr. Collier's health insurance was not going to activate until after a 90-day probationary period, although Mr. Collier maintains that he should have been automatically eligible. Rec. Doc. 35-22, p. 8-10.

     After being terminated, Mr. Collier brought this suit against BMCC alleging unlawful discrimination in violation of the Americans with Disabilities Act (ADA) for the temporary delay in his health insurance coverage, the write-up, and his termination. Rec. Doc. 1. His suit also includes claims for harassment creating a hostile work environment based on Mr.

Anderson's behavior towards Mr. Collier as well as for retaliation, arguing that he was punished for reporting Mr. Anderson's unlawful harassment. *Id.* Finally, there was also an unpaid wage claim alleging that Mr. Collier was not paid for the hours he worked on December 5, 2017. *Id.* After discovery, BMCC filed the Motion for Summary Judgment seeking a complete dismissal of the case. Rec. Doc. 24.

## II. Law and Analysis

### a. Standard of Review

Summary judgment is appropriate if one party can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute exists where the evidence on record "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law" are considered material. *Id.*

The party seeking summary judgment bears the burden of proving that there are no genuine issues of material fact to be resolved at trial. *Bustos v. Martini Club Inc.*, 599 F.3d 458, 468. If the moving party meets this initial threshold, then "the burden shifts to the nonmoving party to produce evidence that a genuine issue of material fact exists for trial." *Id.* Notably, the non-moving party must show "significant probative" evidence of this genuine issue to survive summary judgment. *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994) (citing *In re Municipal Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982)). .

During this analysis, courts must "view the facts in the light most favorable to…the nonmoving party. *City and Cty. of San Francisco v. Sheehan*, 575 U.S. 600, 603 (2015). Further, courts "may not make credibility determinations or weigh the evidence" and "must

resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E&P USA Inc. v. Kerr-McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted). Summary judgment remains appropriate, however, if the non-moving party presents only "colorable" evidence which is "not significantly probative." *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson*, 477 U.S. at 428).

### b. ADA Disability Discrimination Claim

The Americans with Disability Act (ADA) bars any discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. §12112(a). A plaintiff can establish their claim either with direct evidence, or under the *McDonnell* burden-shifting analysis. *Caldwell v. KHOU-TV*, 850 F.3d 237, 241 (5th Cir. 2017). Under the *McDonnell* analysis, the plaintiff must show that "(1) he has a disability, or was regarded as disabled; (2) he was qualified for the job; and (3) he was subject to an adverse employment decision on account of his disability." *Id.* (citation omitted). Alternatively, a plaintiff can establish their *prima facie* case regarding a work-rule violation by showing that they "either…did not violate the rule" or that if the rule was violated, non-disabled "employees who engaged in similar acts were not published similarly." *Green v. Armstrong Rubber Co.*, 612 F.2d 967, 968 (5th Cir. 1980) (citation omitted). If the plaintiff can establish their *prima facie* case, then "a presumption of discrimination arises, and the employer must 'articulate a legitimate non-discriminatory reason for the adverse employment action.'" *Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 590 (5th Cir. 2016) (quoting *EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 615 (5th Cir. 2009)). If the defendant can

then show a legitimate reason for the employment action, the burden shifts back to the plaintiff to provide evidence that this reason is pretextual. *Caldwell*, 850 F.3d at 242.

In the present case, the parties do not dispute that Mr. Collier has a disability or that he was qualified for the job. Rather, the only element in dispute is whether the alleged actions were adverse employment actions taken against Mr. Collier because of his disability. Mr. Collier claims that there are three adverse actions that BMCC took against him: 1) the 90-day delay in implementing Mr. Collier's health insurance, 2) the write-up for leaving the job without permission, and 3) Mr. Collier's alleged termination. The Court will review each in turn.

Before doing so, however, the Court first notes that there is a disputed issue of fact as to whether BMCC had been notified of Mr. Collier's mental health conditions. On one hand, BMCC officials repeatedly deny that they were ever told of Mr. Collier's condition. *See* Rec. Doc. 24-3, p. 48-49; Rec. Doc. 42-4, p. 39; Rec. Doc. 24-6, p. 48-49. On the other hand, Mr. Collier alleges that he informed multiple people and that he wrote this information on the application, but that his application papers were subsequently altered by BMCC. Rec. Doc. 24-2, p. 55-92, 120-124. Resolution of this dispute would require credibility determinations, which the Court cannot do in the summary judgment stage. However, while knowledge is crucial to proving unlawful discrimination, the plaintiff must still prove some nexus between the adverse employment action and the disability. *E.E.O.C. v. LHC Group, Inc.*, 773 F.3d 688, 700 (5th Cir. 2014). Thus, while it is disputed as to whether BMCC knew of Mr. Collier's disability, this disputed fact regarding knowledge, absent some further factual basis creating a nexus, will not by itself create causation as to his *prima facie* case of discrimination. The Court will now review the discrimination claims regarding the three alleged adverse employment actions.

i.  Health Insurance

In this claim, Mr. Collier alleges that BMCC denied him health care coverage for the first 90 days of his employment because of his disability. The factual record does show that BMCC could have chosen to provide benefits sooner. *See* Rec. Doc. 24-2, Ex. 8, p. D00264-D00265 ("Benefits subject to change at the discretion of Bernhard MCC"). Further, there is a factual dispute as to whether Mr. Collier was told that his health insurance may start at the time he was hired. *Id.*, p. 116-118.

Despite these factual disputes regarding the timing of Mr. Collier's health insurance, the Court has found no factual evidence, nor has plaintiff asserted any evidence, that creates a nexus between BMCC's implementation of the 90-day policy regarding health insurance and Mr. Collier's mental health conditions. This is true even operating under the inference that BMCC knew of Mr. Collier's mental health conditions. BMCC was going to provide health insurance coverage after 90 days and there is simply no evidence, direct or circumstantial, that this temporary probationary period was some form of discrimination stemming from Mr. Collier's disability. Because the Court finds that the third element regarding causation cannot be established as to the 90-day probationary delay of health insurance cannot be established, no discussion of whether a temporary delay in health insurance would be considered an adverse action is required. Consequently, any discrimination claims relating to the health insurance probation period are **DISMISSED.**

ii.  Write Up

As to Mr. Collier's claim regarding the write up, the Court finds that Mr. Collier has failed to state a *prima facie* case of discrimination as he cannot establish that it was an adverse employment action. A written reprimand which has "no practical effect on…job duties, pay or

benefits" is not an adverse employment action. *Baig v. McDonald*, 749 F.App'x 238, 241 (5th Cir. 2018). In his opposition to summary judgment, Mr. Collier argues that there was a three-day unpaid suspension included with the write-up but has not provided any competent summary judgment evidence to support that contention.[1] Notably, Mr. Collier did not mention a suspension in his deposition testimony regarding the write up, nor did any of the BMCC employees indicate any such suspension. Thus, the record essentially shows that BMCC was giving Mr. Collier a reprimand without further consequences. As such, the Court finds that the write up would not constitute an adverse employment action and any discrimination claims relating to the write-up are **DISMISSED.**

iii. Termination

At the outset of the discussion regarding Mr. Collier's claim that he was terminated because of his disability, the Court finds that there is a genuine issue of material fact as to whether Mr. Collier was terminated or resigned. *See* Rec. Docs. 35-7, 35-8 (showing Mr. Collier terminated for leaving without informing supervisor). Because a factual dispute on this issue exists, the Court will not analyze at this stage whether this event was a termination, constructive discharge, or resignation. Further, because a factual dispute exists as to both whether BMCC had knowledge of Mr. Collier's condition and as to whether Mr. Collier was terminated, the Court finds here that it is a close call as to whether Mr. Collier has established his *prima facie* case of discrimination at the summary judgment stage. As such, the Court will move to the next stage of the *McDonnell* analysis regarding the employer's reasons for termination and whether there is evidence that such is pretext.

---

[1] The Court notes that the only evidence provided for this is the affidavit of Mr. Granger (Rec. Doc. 35-17, ¶21). However, the information contained therein would be inadmissible hearsay from Mr. Collier. For a further analysis of this, see the Court's Memorandum Ruling on Defendant's Motion to Strike.

In response to this claim, BMCC has provided a legitimate explanation for Mr. Collier's firing, namely his noncompliance with company policies regarding excused absences and for essentially walking out of the job on December 5, 2017. Rec. Docs. 35-7, 35-8; Rec. Doc. 24-3, p. 40-41; Rec. Doc. 24-6, p. 39-43. Because BMCC has demonstrated a legitimate reason for terminating Mr. Collier, to survive summary judgment Mr. Collier must "produce substantial evidence of pretext." *Auguster v. Vermilion Parish School Bd.*, 249 F.3d 400, 403 (5th Cir. 2001). Discrimination must not be the sole reason for the adverse action, but must, at minimum "play a role in the employer's decision making process and have a determinative influence on the outcome." *Pinkerton v. Spellings*, 529 F.3d 513, 519 (5th Cir. 2008) (quoting *Soledad v. United States Dept. of Treasury*, 304 F.3d 500, 503-04 (5th Cir. 2002)).

Here the Court finds that Mr. Collier has failed to produce substantial evidence that BMCC's decision was even partially based on discrimination given BMCC's legitimate reason for termination. To rebut the nondiscriminatory reason the plaintiff must "establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (quoting *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001)).

Regarding his termination, Mr. Collier has not established that he was treated differently than any other employee. To show disparate treatment, the plaintiff must show that the employees to which they compare themselves are "similarly situated" which requires a showing of similar job duties or responsibilities, the same supervisors, and "essentially comparable violation histories." *Lee v. Kansas City Southern Railway Co.*, 574 F.3d 523, 259-60 (5th Cir. 2009). The closest that Mr. Collier has come to establishing disparate treatment is to vaguely show that the policy on excused absences and doctor's notes was unevenly enforced. Rec. Doc.

35-2, p. 46.  Mr. Collier, however, has only pointed to general references of other employees who were not required to bring in notes without demonstrating whether other employees were similarly situated.  Rather, the record seems to demonstrate a lack of comparable violation histories, as it appears that the attendance issues with other employees were resolved after speaking with Mr. Anderson spoke or being issued a write up.  Rec. Doc. 35-2, p. 32-34.  Mr. Collier has not established a factual basis that other employees were similarly situated regarding termination, i.e., that any other employee was not terminated despite similar issues with BMCC's attendance policy.  As such, he cannot establish pretext via evidence of disparate treatment.

      The Court also finds that Mr. Collier has failed to establish pretext through substantial evidence that BMCC's stated reasons are false.  There was clearly some confusion regarding the details of Mr. Collier's termination, as it appears that Mr. Lanney Jones may not have been aware that Mr. Collier worked on December 5, 2017, the day he was terminated.  *See* Rec. Doc. 35-4, p. 40-44 (showing Lanney Jones thought Mr. Collier had been absent from work for several days before being terminated).  Despite this confusion, however, there is still no evidence that Mr. Collier's termination was related to his disability.  He admitted he was never treated as though he were disabled by anyone at work.  Rec. Doc. 24-2, p. 209.  He was also considered eligible for rehire and was contacted by BMCC to work for them again after his initial termination.  *Id.*, p. 211.  Ultimately, the Court finds that while there is a dispute as to whether BMCC knew of Mr. Collier's disability, which arguably provides enough circumstantial evidence to create a *prima facie* case, Mr. Collier has not provided any additional evidence that creates a causal nexus between Mr. Collier's termination and his disability.  Given that BMCC has provided a legitimate reason for terminating Mr. Collier, and given the lack of evidence tying Mr. Collier's termination to his disability, the Court finds that the plaintiff has not met his shifted

burden of showing that BMCC's decision was even partially caused by his disability. Thus, all discrimination claims relating to Mr. Collier's termination are **DISMISSED.**

### c. "Regarded As" Disability Discrimination Claim

As to any "regarded as" disability claims, the Court finds that these should be dismissed. BMCC does not dispute that Mr. Collier suffered from a disability at the time that he was employed with them. Rather, BMCC disputes that they had any knowledge of that disability. Further, the evidence illustrates that Mr. Collier was never treated as disabled. Rec. Doc. 24-2, p. 209. Additionally, Mr. Collier stated that BMCC offered to rehire him. *Id.*, p. 211. Because there is no factual basis that would allow a reasonable jury to find that BMCC regarded Mr. Collier as disabled absent actual knowledge of his disability, any "Regarded As" disability claims are hereby **DISMISSED.**

### d. Hostile Work Environment Claim

The Court finds that Mr. Collier's hostile work environment claim fails because Mr. Collier has not established any factual basis for the Court to determine that the alleged harassment was based on his disability. To prove a disability-based harassment claim, the plaintiff must prove the following:

> (1) that [he] belongs to a protected group; (2) that [he] was subjected to unwelcome harassment; (3) that the harassment complained of was based on her disability or disabilities; (4) that the harassment complained of affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt, remedial action.

*Soledad v. U.S. Dep't. of Treasury,* 304 F.3d 500, 506 (5th Cir. 2002) (quoting *Flowers v. Southern Regional Physician Services, Inc.*, 247 F.3d 229, 235-236 (5th Cir. 2001)). To survive summary judgment, the plaintiff must show some evidence that the alleged harassment was connected to their disability. *See Byrnes v. City of Hattiesburg*, 662 F.App'x 288, 290-91 (5th

Cir. 2016) (holding that the plaintiff "must come forward with more than speculation of unlawful harassment to survive summary judgment"). In *Byrnes*, a man who was both a racial minority in his workplace and had a disability was repeatedly threatened and harassed by a coworker. *Id.* at 290. The 5th Circuit held that summary judgment was still appropriate as the plaintiff had not tied the harassment to his race or disability beyond the mere facts that he was a racial minority within his workplace with a visible disability. *Id*. at 290-91. In essence, there must be some evidence that the harassment was tied to the plaintiff's disability.

Here, the record does not show any such connection. Essentially, Mr. Collier argues that Mr. Anderson knew of his condition, along with his symptoms and sensitivities, and the resulting harassment must be tied to that condition. However, there is simply no factual basis supporting this assertion. First, Mr. Collier admits that at best he told Mr. Anderson the name of his condition and his medications, not his symptoms. Rec. Doc. 24-2, p. 130-131. This undermines Mr. Collier's assertions that Mr. Anderson would have known what would set Mr. Collier off given his disabilities as Mr. Anderson at best knew only the name of the condition and the medications Mr. Collier was on. Further, Mr. Collier admitted that Mr. Anderson never mentioned his disability and that Mr. Anderson "was on a power trip." *Id.*, p. 198. Thus, while it is true that Mr. Collier believes that Mr. Anderson's actions were tied to his disability, beyond Mr. Anderson's potential superficial knowledge of Mr. Collier's condition, there is no evidence tying the alleged harassment to Mr. Collier's disability. Consequently, Mr. Collier's harassment claims fail and are hereby **DISMISSED.**

   e. Retaliation Claim

The ADA prohibits any discrimination "against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a

charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. §12203(a). To establish a *prima facie* case of retaliation, a plaintiff must show: "(1) [they] engaged in an activity protected by the ADA, (2) [they] suffered an adverse employment action, and (3) there is a causal connection between the protected activity and the adverse action." *Lyons v. Katy Ind. School District*, 964 F.3d 298, 304 (5th Cir. 2020).

A complaint to an employer about harassment which is unconnected to the plaintiff's disability is not a protected activity. *Gordon v. Acosta Sales and Marketing, Inc.*, 622 F.App'x 426, 431 (5th Cir. 2015); *see also Davis v. Dallas Ind. School Dist.*, 448 F.App'x 485, 493 (5th Cir. 2011) ("We have consistently held that a vague complaint, without any reference to an unlawful employment practice under Title VII, does not constitute protected activity"). While "[m]agic words are not required," the activity "must at least alert an employer to the employee's reasonable belief that unlawful discrimination is at issue." *Brown v. United Parcel Service*, *Inc.*, 406 F.App'x 837, 840 (5th Cir. 2010).

In the present matter, as with the other claims, there is simply no factual evidence tying Mr. Collier's complaints to various HR directors to his disability. For example, Mr. Collier discusses calling Ms. Kendra Brown regarding Mr. Anderson's behavior including asking Mr. Collier, and only Mr. Collier, for doctor's notes and yelling at Mr. Collier. Rec. Doc. 24-2, p. 140-143. However, at no point does he indicate that he alerted BMCC regarding any form of unlawful discrimination. From the Court's perspective, Mr. Collier essentially argues that because BMCC allegedly knew of his disability, any complaint against Mr. Anderson should have put the company on alert. However, with no factual basis connecting these, the Court finds that his complaints to HR are not protected activities.

The Court further finds that Mr. Collier's rejection of Mr. Anderson's hug on one occasion is not a protected activity.  First, the Court notes that the cases cited by Mr. Collier regarding rejecting Mr. Anderson's hug are inapposite as they describe instances where an employee rejected a supervisor's advances after long periods of alleged harassment.  *See Ogden v. Wax Works, Inc.*, 214 F.3d 999 (8th Cir. 2000) (worker subjected to unwelcome advances over the course of over one year); *E.E.O.C. v. New Breed Logistics*, 783 F.3d 1057 (6th Cir. 2015) (worker subjected to repeated sexually suggestive comments "several times a day, 'every day'").  In the present matter, Mr. Collier tries to assert that denying Mr. Anderson from hugging him on one occasion constitutes a protected activity.  This type of singular rejection would not be a protected activity.  *See Frank v. Harris County*, 118 F.App'x 799, 804 (5th Cir. 2004) ("[Plaintiff] provides no authority for the proposition that a single 'express rejection"…constitutes as a matter of law a protected activity for purposes of retaliation").  Thus, the Court finds that Mr. Collier's claims for retaliation fail because he has failed to allege a protected activity.  Ultimately, there is no factual basis to hold that his complaints to HR were sufficient to alert them to concerns about unlawful harassment and the single rejection of the hug would not constitute a protected activity.  As such, Mr. Collier's retaliation claims are hereby **DISMISSED.**

    f. Wage Payment Claim

Mr. Collier has admitted that he was paid for his work on December 5, 2017, and does not oppose dismissal of the wage payment claim.  Rec. Doc. 35, p. 68.  As such, this claim is hereby **DISMISSED.**

III. Conclusion

As a result of the foregoing discussion, Mr. Collier's claims are hereby **DISMISSED**. Ultimately, the key issue in this case is that while Mr. Collier has established that there is a genuine issue of material fact as to whether BMCC knew of his disability, he has failed to show how any of BMCC's decisions were tied to that disability, which is fatal to Mr. Collier's claims.

**THUS DONE AND SIGNED** in Monroe, Louisiana on this 15th day of March, 2022.

TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE